13 N.J. Super. 125 (1951)
80 A.2d 220
EMILY B. TAYLOR, PLAINTIFF-RESPONDENT,
v.
PUBLIC SERVICE INTERSTATE TRANSPORTATION COMPANY AND CHARLES Y. SHANER, DEFENDANTS-APPELLANTS, AND JEWETT J. CAVES, DEFENDANT. MARION FISHER SHAGG AND JOHN CONRAD SHAGG, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
PUBLIC SERVICE INTERSTATE TRANSPORTATION COMPANY AND CHARLES Y. SHANER, DEFENDANTS-APPELLANTS, AND JEWETT J. CAVES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1951.
Decided April 17, 1951.
*126 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
*127 Mr. Louis F. Stein, Jr., argued the cause for appellants. (Mr. Carl T. Freggens, attorney).
Mr. Leon A. Wingate, Jr., argued the cause for respondents (Messrs. Bennett & Wingate, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The general supervisory power of the appellate tribunal which enables it to examine the propriety of jury verdicts and the consequent judgments founded upon them is essentially remedial in character. The power is not exercised with a view of supplanting the appropriate function of the jury. It continues to be preeminently the mission of the jury to resolve the credibility of the testimony of the witnesses, to settle the facts, and to determine the inferences which ought to be logically and legitimately drawn from them. A verdict founded upon logical and legitimate inferences from facts established by evidence is normally conclusive. Smith v. P. Lorillard Co., 67 N.J.L. 361 (Sup. Ct. 1902). But where neither the facts nor the permissible inferences from them vindicate the verdict and it is manifest that the verdict was fabricated by the influences of sympathy, or passion, or prejudice, or based upon mistake, it must in the course of the administration of justice be annulled. Bowen v. Healy's, Inc., 16 N.J. Misc. R. 113, 115 (Cir. Ct. 1938). "On a review of any cause involving issues of fact determined by the verdict of a jury, the verdict, if contrary to the weight of the evidence, shall be set aside." Rules 1:2-20; 4:2-6.
It was storming on Tuesday morning, January 13, 1948. A screen of snow and sleet somewhat decreased the range of visibility and an inch or two of slush overspread the highway as the defendant, the Public Service Interstate Transportation Company, through the agency of its driver, Charles Shaner, operated its passenger bus westerly on River Road in the Township of Pennsauken, Camden County. About 9:30 A.M. the bus, although it was proceeding along the northerly lane of the highway, suddenly came into collision in that lane *128 with the right side of a Ford automobile driven by the defendant Jewett Caves.
Among the several passengers in the bus were the female plaintiffs who suffered bodily injuries in the mishap. The verdict rendered at the conclusion of the trial in which the actions were consolidated awarded Mrs. Taylor $3,000 damages, Mrs. Shagg $1,000, and Mr. Shagg, who sued per quod, $1,000, and placed the liability upon the bus company and its driver, exonerating the driver of the automobile. The plaintiffs based their causes of action upon an implication of negligence on the part of the common carrier. Shay v. Camden & Suburban Ry. Co., 66 N.J.L. 334 (E. & A. 1901).
Recognizing that the bus and the automobile were proceeding in opposite directions on River Road, the proximate and efficient cause of the collision is clearly intelligible. The initial clue is supplied by the pre-trial order which states: "Defendant, Caves, asserts that while operating his car in back of the tractor-trailer, his car went into a spin prior to the collision."
The following questions and answers extracted from the testimony of Caves are informational:
"Q. And when you were right behind the tractor-trailer, your automobile went into a skid, didn't it? A. I thought it did, yes, sir.

* * * * * * * *
Q. How fast were you going when you started to skid? A. That I couldn't say. It wasn't as fast as I was going before.

* * * * * * * *
Q. You didn't see any bus at any time? A. No, sir.

* * * * * * * *
Q. Do you remember anything that happened from the time you went into the skid until you were being taken out of the car? A. No, sir.

* * * * * * * *
Q. What kind of condition was your car in after you were taken out of the car? A. Pretty bad.
Q. What do you mean by `pretty bad'? A. It was mashed beyond repair.
Q. Where was it mashed? A. On the right front side."
The obvious preponderance of the other testimony bears out the concept that the automobile suddenly emerged from behind *129 the tractor-trailer directly in front of the on-coming bus. Indeed, the movement of the automobile to its left before the impact was so momentary that the driver of the automobile never saw the bus. The only contribution of the bus to the occurrence of the accident was its lawful presence on the highway at the moment. The cause of the collision appears to have been the intervening circumstance that the automobile suddenly skidded directly into the path of the closely approaching bus. Assuredly that unfortunate circumstance was not originated or influenced by any negligent act or omission of the driver of the bus, and but for the circumstance of the skidding car, we think the accident would not have happened. The extremely transitory manner in which the automobile entered upon the north lane in front of the bus is reasonably deducible from the uncontroverted fact that the driver of the automobile never saw the bus. In other respects the occurrence resembles the misadventure in Boreth v. Kisselman, 7 N.J. Misc. R. 922 (Sup. Ct. 1929).
The wistful conceptions projected on behalf of the plaintiffs-respondents that the bus was traveling at an excessive rate of speed, that the windshield equipped with wipers and defrosters was completely covered with snow, sleet, and vapor, and that the automobile entered and thereafter remained on the north lane at a considerable distance ahead of the bus, succumb in our opinion to the credible predominance of the testimony to the contrary.
The verdict visiting liability on the appellants is in conspicuous opposition to the reasonable probabilities of the circumstances amid which the mishap occurred and adverse to the manifest weight of the evidence.
The judgments are reversed.